SPENCER C. PLATT et al., Respondents, v. MARIA R. WITHINGTON et al., Appellants.

P., by his will, made specific devises to all of his children; he devised to his daughter M. certain land, with the proviso, "shall I not die possessed of said last-mentioned property, or should the property be the subject of litigation at the time of my death," then that M. shall have certain other property. The title to the land so devised was, at the time of making the will, in P., but in fact belonged to a firm, in which he and another were copartners owning equal shares. An action of ejectment was then pending, the subject of which was the land so devised to M. After said action had terminated in the testator's favor, he sold the land he had devised in the alternative to M. At the time of P.'s death an action was pending against him, brought by the executors of his copartner, to set aside certain conveyances made by their testator to P.; these did not include the property devised to M.; also to require P. to account for the partnership property in his hands. In an action of partition, *held*, that, within the meaning of the terms of his will, P. died possessed of one-half the property specifically devised to M. and it was not, at the time of his death, the subject of litigation, and so, that she took an undivided one-half thereof.

It may not be said that real estate is the subject of litigation between parties where the only question between them in regard to it is an accounting for the rents and profits received by one of them.

*Platt* v. *Withington* (47 Hun, 558), reversed.

(Argued March 12, 1890; decided April 15, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 2, 1888, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

This was an action of partition.

The judgment determined the rights of the parties in and to certain real estate in New York city, known in this case as the Thirty-ninth street lots. By such judgment it was determined that the defendant Mrs. Withington was seized in fee of an equal, undivided one-tenth part of the lots mentioned. She claims she is seized in fee of an equal, undivided one-half part under the will of her father, and hence she appeals from the judgment of the court below, which denies such claim.

The decision of the case depends upon no contradictory evidence, but simply upon the construction, in view of the surrounding facts, to be given to the will of Geo. W. Platt, deceased, who was the father of the defendant Mrs. Withington. The material facts are, in substance, as follows:

Prior to 1863, George W. Platt and Nathan C. Platt, his brother, were partners in business, as jewelers, in the city of New York. In May, 1863, the premises in question were conveyed to George W. Platt, but the property so conveyed belonged, as the court found, to the firm, and the title was taken by George W. Platt for the firm and was held by him as the property of the firm, subject to the payment of its debts and the settlement of the accounts of the firm, and the two brothers held the same in equal proportions as tenants in common.

There has never been any dispute regarding these facts, and it is conceded that George W. Platt made no claim to this property other than such as was founded upon the facts above mentioned.

Nathan C. Platt died on the 4th day of July, 1863, and his will was admitted to probate on the thirty-first of October of that year. The executors of the will of Nathan C., a few years after its probate, commenced an action against George W. Platt to set aside certain conveyances of real estate made to him by Nathan C. Platt in the years 1860 and 1861, on the ground of fraud. The conveyances were specifically alleged and the real estate affected was particularly described. No mention was made of the Thirty-ninth street lots, and no deed thereof was ever procured by George W. from Nathan C. Platt. The judgment demanded was that the conveyances described should be declared void; that the defendant should be enjoined from conveying the property in the meantime; that the defendant should account for all the property which belonged to the partnership, etc., and pay over and deliver to plaintiffs so much of the property as they were entitled to. In the complaint above mentioned the "Patty" farm was alleged to have been conveyed by Nathan C. to George W. Platt, and the complaint asked that such conveyance be declared void.

It further appeared that soon after George W. Platt took title to the Thirty-ninth street lots, and on or about the 2d day of October, 1863, one Martha D. Carnes commenced an action of ejéctment against him to recover possession of the entire premises, and a *lis pendens* was filed, describing them in full. Judgment in favor of defendant was entered in that action, December 11, 1875, and on appeal, it was affirmed at General Term and judgment of affirmance entered December 4, 1876, and no appeal was ever taken therefrom. On the 24th day of February, 1874, George W. Platt executed his will, and on the 11th of March, 1875, he executed a codicil thereto, and on the 3d day of April, 1881, he died. His will was duly admitted to probate. He left him surviving five children, three daughters and two sons.

In the second and third clauses of such will, specific property was devised to his son Henry, which he has received. In the fourth clause specific property was devised to his son George, which he has received. In the sixth, seventh and eighth clauses, specific property was separately devised to each of his two daughters, Mary and Eliza, which they have received.

In the fifth clause the testator specifically devised the Thirty-ninth street lots to Mrs. Withington in this language: "I give, devise and bequeath to my daughter, Maria R. Withington and to her heirs and assigns forever, all those certain lots of land" (describing them), after which the testator continues: "but should I not die possessed of said last mentioned property, or should the property be the subject of litigation at the time of my death," then the testator gave her certain land in Potter county, Pennsylvania, containing between four and five thousand acres. In the same clause the testator also said: "I give, devise and bequeath to my said daughter, Maria and to her heirs and assigns forever, all that certain farm or parcel of land, with the appurtenances thereto belonging, situate in the town of Sterling, Cayuga county, New York, known as the Patty farm, containing sixty and eighty-nine-one-hundredths acres of land, more or less; but should I not die possessed of said last mentioned property, or

should the said property be the subject of litigation at the time of my death," then the testator gave his said daughter certain property in Vermont, which has never been found by the executors. No question arises in regard to any but the Thirty-ninth street lots. Mrs. Withington has received no part of the property specifically devised to her in the fifth clause.

The case of the executors of *Platt* v. *Platt*, to set aside the conveyances above alluded to, did not terminate in final judgment until some time in October, 1877, when judgment in favor of plaintiffs was entered setting aside the conveyances and settling the accounts of the late firm.

In March, 1880, George W. Platt, the testator, conveyed to other parties the land owned by him and described in the above fifth clause as land in Potter county, Pennsylvania. The plaintiff in this action is one of the sons of Nathan C. Platt, and he brings this action of partition in order to procure a legal division of these Thirty-ninth street lots. The sole question in the case is as to the proportion in which the undivided half interest in these lots of which the testator, George W. Platt, died seized, shall be divided. Mrs. Withington claims under the above mentioned fifth clause of her father's will, to be entitled to the whole of that half interest, while her brothers and sisters claim that they should all share equally in such half interest by virtue of the residuary clause in the will, because the testator did not, as they now allege, die possessed of those lots, and also because they were the subject of litigation at the time of the death of the testator.

The Special Term held against the defendant, Mrs. Withington, on the ground that the property was the subject of litigation at the time of the death of the testator, and upon her appeal to the General Term, that court affirmed the Special Term on the ground that the testator did not, within the meaning of the language of the fifth clause, die possessed of the property.

*Wm. Henry Arnaux* for appellant. The judgment of the General Term was pronounced upon an erroneous theory both

of law and of fact. (*Fairchild* v. *Fairchild*, 64 N. Y. 471, 479; *Lefevre's Appeal*, 69 Penn. St. 122; *Willett* v. *Brown*, 65 Mo. 138.) The intention of the testator was to make a provision for appellant, which the construction given by the court below wholly defeats. The intention of the testator must guide the court. (*McLean* v. *Freeman*, 70 N. Y. 86; *Dubois* v. *Ray*, 35 id. 162; *Kirr* v. *Dougherty*, 79 id. 348; *Lytle* v. *Beveridge*, 58 id. 592; *Taggart* v. *Murray*, 53 id. 236; *Gelston* v. *Shields*, 78 id. 280; *Kane* v. *Astor*, 9 id. 113, 139; *Malcom* v. *Malcom*, 3 Cush. 479.)

*Edward S. Clinch* for respondents. When called on to give construction to a will, when the intention is determined, it must be carried out, if consistent with the rules of law. (*McNaughton* v. *McNaughton*, 41 Barb. 50; *Vandemark* v. *Vandemark*, 26 id. 418; *Banner* v. *Storm*, 1 Sandf. Ch. 357; *Wolfe* v. *Van Nostrand*, 2 N. Y. 436; 3 R. S. [7th ed.] 2284, § 5; Wigram on Wills, § 4; 1 Greenl. on Ev. § 289; Chitty on Cont. [10th ed.] 85; *Shepard* v. *Gassner*, 41 Hun, 326, 331; *Fosdick* v. *Delafield*, 2 Redf. 392.) The conclusion reached by the executors cannot be interfered with by the courts unless it appear that an unreasonable use has been made of the power, and that the conclusion is one that could not have been intended by the testator. The presumption is in favor of the interpretation made by the executors. (*Pray* v. *Belt*, 1 Pet. 680.) This court will not review questions of fact found by the Special Term and affirmed by the General Term, nor will it assume that there was not evidence sufficient to sustain the findings of fact in the absence of a certificate that all the evidence has been included, or all material to the question sought to be reviewed. (*Porter* v. *Smith*, 107 N. Y. 531.)

PECKHAM, J. I think the testator died possessed of the Thirty-ninth street lots within the meaning of the language of the fifth clause of his will, and that such lots were not the subject of litigation at the time of his death.

(1) As to the meaning of the testator when he used the language, "should I not die possessed of" this property.

He was engaged in making provision for his children by his will, and the character of his title to the property in question was of course known to and recognized by him. He had already made specific devises of property to his two sons by prior clauses in his will, and the two clauses which followed the fifth contained provisions for his other daughters, and this fifth clause is the sole one in which any specific devise is made to his daughter, the defendant Mrs. Withington. At the time of making the will the action of ejectment of *Carnes* v. *Platt* was pending, and it involved the possession of the Thirty-ninth street property. It was brought for the sole purpose of obtaining such possession, and it was the only action in existence which did involve it. Under such a state of facts, it seems to me that the most natural meaning of his language as to his not dying possessed of the land is that he was then alluding to the contingency of defeat in the Carnes ejectment suit, and to the dispossession which would necessarily follow such defeat. The words "possessed of" in the clause quoted do imply (as I assume, and as the learned judge at General Term said) that the testator should be "possessed of as owner," and not simply have a manual possession. But I do not think it meant that he was to be possessed of the whole of the property as between himself and his brother, but that he was to be possessed of it as owner as between himself and the plaintiff in the ejectment suit.

That it was his title as between himself and that plaintiff which he was bearing in mind is strengthened by the language which follows, for he says if he should not die possessed of the property, or if it should then be the subject of litigation the alternative devise should come in force. He thus had in contemplation not only the adverse result of this Carnes suit before his death which would dispossess him of the land, but he was mindful of the fact that his death might occur before the termination of the suit which involved such possession, and in such case the other property was given, for

otherwise the suit might terminate adversely to the rights of his estate after his death, and in that event his gift of the property to his daughter would be fruitless. Some little light is perhaps thrown upon this language by the further fact that after the Carnes ejectment suit had finally terminated in his favor, so that his possession was in no danger from that source, the testator sold the land in Potter county, Pennsylvania, which would have gone to Mrs. Withington under the provisions of the fifth clause in case he did not die in possession of the Thirty-ninth street lots.

It may be plausibly argued that the testator, when he sold the land in Pennsylvania, knew that he was in possession of the Thirty-ninth street lots as against the Carnes claim which he had succeeded in defeating, and that as the case then stood. his devise of those lots to Mrs. Withington would take effect, upon his death, and he might, therefore, properly sell the land in Pennsylvania without making any alteration in his will The force of the argument lies in the implied construction given by the testator to his own language, and the implication is based upon the assumption that if he had construed his language to mean that if he did not die possessed of these lots as sole owner as between himself and his brother's representatives, that in such case the alternative devise would take effect, he would not, in that event, have sold the Pennsylvania land and thus rendered such devise worthless, or else he would have altered his will. It is not a very strong argument I admit, because men frequently neglect to alter their wills when a change of circumstances has rendered such alteration imperative in order to accomplish the purposes, which it may be evident from a perusal of the will the testator had in view at the time of its execution. But whatever weight it has is in favor of the construction I have given of this language. From the facts already alluded to, however, it seems quite clear to me that it was not a possession as owner as against the claims of his brother's representatives which the testator had in view when he used this language, but it was possession as owner as against the claim set forth in the Carnes suit. It seems also

that none of the parties to this action thought at the time when it was commenced that the testator George W. Platt did not die possessed of this Thirty-ninth street property, for, in the complaint herein, the only ground upon which it is claimed that Mrs. Withington lost the land is that it was the subject of litigation at the time of the testator's death. The defendants Henry M. and George W. Platt, by their answer, also set up as the only ground for their claim of a one-tenth interest in the property that at the time of the testator's death it was the subject of litigation. The surviving executors of the will of George W. Platt, by their answer, set up the same fact as the only basis for the claim of the other children to any share in this property.

The claim that the testator did not die possessed of the property is evidently an after-thought on the part of these defendants, and we do not think it is well founded.

(2) As to the testator's meaning when he said in the same fifth clause, "should the property be the subject of litigation at the time" of his death. Was it the subject of litigation within that language? The Carnes suit, although commenced before he made his will, was still in existence at the time when his will was executed, and had ended in December, 1876, years before the death of the testator, and the only suit that was pending at his death was that of the executors of *Platt* v. *Platt*. So far as the Thirty-ninth street lots are concerned, I am clearly of the opinion that they were not the subject of litigation in the last named action. There was no contest over those lots inaugurated or carried on by that action. The complaint referred to certain conveyances from Nathan C. to Geo. W. Platt, and asked to have them set aside, but there was no conveyance of these lots from Nathan to Geo. W., nor was any claim ever made that the lots were other than partnership property, or that Geo. W. had any other than a half interest therein, and this half interest was admitted or conceded by the brother's representatives, and no issue or contest in any manner whatever was raised or stated in regard to these lots as between the parties in the Platt litigation. But as to the

Patty farm, the case was entirely different. There was a conveyance of that farm from Nathan C. to Geo. W. Platt, and the complaint, in the case of *Platt* v. *Platt*, asked for judgment setting such conveyance aside.

The *Platt* case was not finished when Geo. W. Platt died, and hence it is entirely plain that the Patty farm was the subject of litigation at the time of his death.

The distinction between the two cases, that of the Thirty-ninth street lots, and the Patty farm, is, therefore, obvious. There is no inconsistency that I can see in holding that the case of *Platt* v. *Platt* is the litigation referred to by the testator when speaking of the Patty farm, and that he does not refer to it when he is speaking of the litigation regarding the Thirty-ninth street lots. The inconsistency does not exist, because the Patty farm was one of the subjects of litigation in the case of *Platt* v. *Platt*, while the Thirty-ninth street lots were not the subject of litigation in that case at any time or for any purpose. There was an accounting in the *Platt* case of the rents and profits received from the Thirty-ninth street lots, and of the disbursements made by Geo. W. Platt in relation thereto. That was made in order to have a general accounting of the affairs of the late firm. But it cannot be properly said that a piece of real estate is the subject of litigation between parties, where the only question between them in regard to it is an accounting for the rents and profits received by one of them.

I think that, at the time of the death of Geo. W. Platt, he was possessed of the Thirty-ninth street lots, and that they were not then the subject of litigation, and hence Mrs. Withington took the undivided one-half interest therein, of which her father died seized, by virtue of the fifth clause in his will. It follows, of course, that the defendants Henry M. and George W. Platt, and Mary N. Todd and Eliza Ann Stoddard are not, nor is either of them, entitled to any interest whatever in and to the Thirty-ninth street lots.

The judgment should, therefore, be reversed and judgment entered for Mrs. Withington accordingly, with costs to her to

be paid by the defendants appearing and claiming under the will of the testator Geo. W. Platt, or by his executors out of his estate other than the land devised to Mrs. Withington.

All concur.

Judgment accordingly.